UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMIRO CABRERA, | ) |
|     Petitioner, | ) ) ) |
| v. | ) ) ) Case No. 1:25-cv-12160 |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security; RUSSELL HOTT, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement, | ) ) ) ) ) |
|     Respondents. | ) ) |

**PETITION FOR WRIT OF HABEAS CORPUS AND
COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

The Petitioner, RAMIRO CABRERA, by and through his own and proper person and through his attorneys, NICOLE PROVAX AND JENNIFER PEYTON, of the LAW OFFICES OF KRIEZELMAN BURTON & ASSOCIATES, LLC, petition this Honorable Court to issue a Writ of Habeas Corpus to review his unlawful detention in violation of his constitutional and statutory rights.

**Introduction**

1. Petitioner is presently being detained by U.S. Immigration and Customs Enforcement ("ICE") at the Broadview Detention Center, located in Broadview, Illinois.

2. Petitioner is a native and citizen of Mexico. He has been present in the United States for more than 20 years.

3. Petitioner has 4 U.S. citizen children and no criminal record.

4. Petitioner's detention is a substantial deprivation and burden that puts Petitioner and his family at risk without his support.

1

5. Petitioner's detention became unlawful on October 3, 2025 when he was taken into custody by ICE/ERO officials. His continued detention is an unlawful violation of due process and an incorrect interpretation of immigration law.

6. Petitioner was initially detained on October 3, 2025 in Chicago, Illinois. The circumstances surrounding the encounter are unknown, but Petitioner has no criminal record.

7. Petitioner is presently detained at Broadview Detention Center, located in Broadview, Illinois.

8. Petitioner respectfully asks this Court to issue a temporary restraining order directing Respondents to conduct a bond hearing to ensure his due process rights.

9. In the alternative, Petitioner respectfully requests the Court order Respondents to show cause why this Petition should not be granted within three days. *See* 28 U.S.C. § 2243.

## Jurisdiction and Venue

10. The action arises under the Constitution of the United States, the Immigration and Nationality Act of 1952, as amended ("INA"), 8 U.S.C. § 1101 *et seq*., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

11. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241, and Article I, section 9, clause 2 of the United States Constitution (the "Suspension Clause"), as Petitioner is presently subject to immediate detention and custody under color of authority of the United States government, and said custody is in violation of the Constitution, law or treaties of the United States.

12. This action is brought to compel the Respondents, officers of the United States, to accord Petitioner the due process of law to which he is entitled under the Fifth and Fourteenth Amendments of the United States Constitution.

13. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus), and the All Writs Act, 28 USC § 1651.

14. Venue is proper in the Northern District of Illinois because Petitioner is presently detained by Respondents at Broadview Detention Center – which is located within the Northern District. 28 U.S.C. § 1391(b), (e)(1).

## Parties

15. Petitioner RAMIRO CABRERA is a native and citizen of Mexico. Petitioner is presently detained at Broadview Detention Center, located in Broadview, Illinois.

16. Respondent KRISTI NOEM is being sued in her official capacity only. Pursuant to the Homeland Security Act of 2002, Pub. L. 107-296, Defendant NOEM, through her delegates, has broad authority over the operation and enforcement of the immigration laws.

17. Respondent RUSSELL HOTT is being sued in his official capacity only, as the Field Office Director of the Chicago Field Office of ICE. As such, he is charged with the detention and removal of aliens which fall under the jurisdiction of the Chicago Field Office.

## Custody

18. Petitioner RAMIRO CABRERA is being unlawfully detained by ICE and he is not likely to be removed in the reasonably foreseeable future.

## Factual and Procedural Background

19. Petitioner RAMIRO CABRERA is a native and citizen of Mexico. He has been present in the United States for more than 20 years.

20. Petitioner is married and has 4 U.S. citizen children. He lives with his wife and children in Chicago, Illinois and is the primary financial support for the family.

21. Petitioner entered the U.S. most recently in 2002 without inspection and has remained in the country since that time.

22. Petitioner was recently detained by DHS and taken to Broadview Detention Center in Broadview, Illinois.

23. On September 5, 2025, the Board of Immigration Appeals ("BIA") issued the decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). This decision, for the first time in immigration history, proclaimed that any person who crossed the border unlawfully and is later taken into immigration detention is no longer eligible for release on bond.

24. Before September 5, 2025, just 3 months prior, the official position of the BIA was that the Immigration Judge had power to grant release on bond under UNA section 236(a) if the person did not have a disqualifying criminal record and the judge was satisfied, after a hearing, that the person was not a danger to the community or a flight risk. *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025).

25. Moreover, ICE had a longstanding practice of treating noncitizens taken into custody while living in the United States as detained pursuant to 8 U.S.C. section 1226(a). *Rocha Rosado v. Figueroa*, 2025 WL 2337099, (D. Arizona August 11, 2025); *see Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding

practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is."). However, this position changed on July 8, 2025, when internal "interim guidance" was released regarding a change in their longstanding interpretation of which noncitizens are eligible for release on bond. Ex. 1, Interim Guidance (July 8, 2025). ICE's position is that only those already admitted to the U.S. are eligible to be released from custody during their removal proceedings, and that all others are subject to mandatory detention under 8 U.S.C. § 1225, instead of 8 U.S.C. § 1226, and will remain detained with only extremely limited parole options at ICE's discretion. *See id.*

26. Petitioner's continued detention, without the possibility to request a bond hearing, separates him from his family, prohibits him from being able to financially provide for his family, and inhibits his removal defense in many ways, including by making it difficult to communicate with witnesses, gathering evidence, and afford legal representation, among other related harm.

27. Since the September 5, 2025 BIA decision, Petitioner now has no opportunity to seek a request for bond redetermination and must remain detained away from his family, counsel, and support system and continues to be subjected to the aforementioned harms.

28. Because Respondent's removal proceedings will remain pending until he is transferred and placed before a Judge, there is little likelihood that Petitioner's removal will occur in the reasonably foreseeable future.

## Legal Framework

**Due Process Clause**

29. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

30. In the immigration context, the Supreme Court only recognizes two purposes for civil detention: preventing flight and mitigating the risks of danger to the community. *Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 528. A noncitizen may only be detained based on these two justifications if they are otherwise statutorily eligible for bond. *Zadvydas*, 533 U.S. at 690.

31. "The fundamental requirement of due process is the opportunity be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In this case, to determine the due process to be afforded to Petitioner, the Court should consider (1) the private interest affected by the government action; (2) the risk that current procedures will cause an erroneous deprivation of that private interest, and the extent to which that risk could be reduced by additional safeguards; and (3) the government's interest in maintaining the current procedures, including the governmental function involved and the fiscal and administrative burdens that the substitute procedural requirement would entail. *Id*. at 335.

**Detention Provisions under the Immigration and Nationality Act**

32. The Immigration and Nationality Act is codified at Title 8 of the United States Code, Section 1221 *et seq.*, and controls the United States Government's authority to detain noncitizens during their removal proceedings.

33. The INA authorizes detention for noncitizens under four distinct provisions:

1) **Discretionary Detention. 8 U.S.C. § 1226(a)** generally allows for the detention of noncitizens who are in regular, non-expedited removal proceedings; however, permits those noncitizens who are not subject to mandatory detention to be released on bond or on their own recognizance.

2) **Mandatory Detention of "Criminal" Noncitizens. 8 U.S.C. § 1226(c)** generally requires the mandatory detention of noncitizens who are removable because of certain criminal or terrorist-related activity after they have been released from criminal incarceration.

3) **Mandatory Detention of "Applicants for Admission." 8 U.S.C. § 1225(b)** generally requires detention for certain noncitizen applicants for admission, such as those noncitizens arriving in the U.S. at a port of entry or other noncitizens who have not been admitted or paroled into the U.S. and are apprehended soon after crossing the border.

4) **Detention Following Completion of Removal Proceedings 8 U.S.C. § 1231(a)** generally requires the detention of certain noncitizens who are subject to a final removal order during the 90-day period after the completion of removal proceedings and permits the detention of certain noncitizens beyond that period. *Id.* at § 1231(a)(2), (6).

34. This case concerns the detention provisions at §§ 1226(a) and 1225(b). Both detention provisions, §§ 1226(a) and 1225(b), were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585.[1]

---

[1] Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

35. Following enactment of the IIRIRA, the Executive Office for Immigration Review ("EOIR") drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225(b) and that they were instead detained under § 1226(a) after an arrest warrant was issued by the Attorney General. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) *will be eligible for bond and bond redetermination*") (emphasis added).

36. The legislative history behind § 1226 also demonstrates that it governs noncitizens, like Petitioner, who were deemed inadmissible upon inspection at the border, released into the United States at the border after being placed into removal proceedings, and were present in the United States for a number of years prior to being taken into detention. Before passage of the Immigration Reform and Immigrant Responsibility Act ("IRIRA"), the predecessor statute to § 1226(a) governed deportation proceedings for all noncitizens arrested within the United States, and like § 1226(a), included a provision allowing for discretionary release on bond. *See* 8 U.S.C. § 1252(a)(1) (1994).[2] After passing the IIRIRA, Congress declared the new § 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney

---

[2] See 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability...any [noncitizen]...may, upon warrant of the Attorney General, be arrested and taken into custody."); Hose v. Immigration & Naturalization Serv., 180 F.3d 992, 994 (9th Cir. 1999)(noting a "deportation hearing" was the "usual means" of proceeding against an alien physically in the United States).

General to arrest, detain, and release on bond" a noncitizen "who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229. *See also* H.R. Rep. No. 104-828, at 210. Because noncitizens like Petitioner were entitled to discretionary detention under § 1226(a)'s predecessor statute, and Congress declared the statute's scope unchanged by IIRIRA, the Court should interpret § 1226 to allow for a discretionary release on bond for noncitizens in a situation similar to Petitioner.

37. On September 5, 2025, the Board of Immigration Appeals issued its decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) and proclaimed for the first time that any person who crossed the border unlawfully and is later taken into immigration detention is no longer eligible for release on bond.

38. This decision ignores decades of immigration law and precedent by the Supreme Court, as well as the policies and procedures that had been in place before EOIR for more than 30 years.

39. In *Jennings v. Rodriguez*, the Supreme Court analyzed the statutory sections in question, 8 U.S.C. section 1225 and 8 U.S.C. 1226. 583 U.S. at 287. The Court held that section 1225(b) "applies primarily to aliens seeking entry into the United States." Id. At 297 Then, the Court noted that section 1226 "applies to aliens already present in the United States." Id. At 303.

40. The Court specifically found that "Section 1226(a) creates a default rule for those aliens by permitting- but not requiring- the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, 'except as provided in subsection (c) of this section.'" (subsection pertains to aliens who fall into categories

9

involving criminal offenses or terrorist activities). Id. At 303. "Federal regulations provide that alien detained under §1226(a) receive bond hearings at the outset of detention." Id. At 306; 8 CFR 236.1(d)(1), 1236.1(d)(1)

41. The Supreme Court's analysis in *Jennings* demonstrates the difference for detention of arriving aliens who are seeking entry into the United States under section 1225 and the detention of those who are already present in the United States under section 1226.

42. The BIA's erroneous interpretation of the INA defies the plain text of 8 U.S.C. §§ 1225 and 1226. A key phrase in § 1225 states that "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ***seeking admission*** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, mandatory detention applies when "the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Martinez*, 2025 WL 2084238, at *2.

43. The "seeking admission" language, "necessarily implies some sort of present tense action." *Martinez*, 2025 WL 2084238, at *6; *see also Matter of M- D-C-V-*, 28 I&N Dec. 18, 23 (BIA 2020) ("The use of the present progressive tense 'arriving,' rather than the past tense 'arrived,' implies some temporal or geographic limit . . . ."); *U.S. v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of verb tense is significant in construing statutes.").

44. In other words, the plain language of § 1225 applies to immigrants currently seeking admission into the United States at the nation's border or another point of entry. It

does not apply to noncitizens "already present in the United States"—only § 1226 applies in those cases. *See Jennings*, 583 U.S. at 303.

45. When interpreting a statute, "every clause and word . . . should have meaning." *United States ex rel. Polansky, M.D. v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (internal quotation marks and citation omitted). And "the words of the statute must be read in their context and with a view to their place in the overall statutory scheme." *Gundy v. United States*, 588 U.S. 128, 141 (2019) (quotation omitted).

46. The *Matter of Yajure Hurtado* decision in requires the Court to ignore critical provisions of the INA and it also renders portions of the newly enacted provisions of the INA superfluous. "When Congress amends legislation, courts must presume it intends its amendment to have real and substantial effect." *Van Buren v. United States*, 593 U.S. 374, 393 (2021).

47. Congress passed the Laken Riley Act (the "Act") in January 2025. The Act amended several provisions of the INA, including §§ 1225 and 1226. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Relevant here, the Act added a new category of noncitizens subject to mandatory detention under § 1226(c)—those already present in the United States who have also been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E); 8 U.S.C. § 1182(a)(6)(A). Of course, under the government's position, these individuals are already subject to mandatory detention under § 1225—rendering the amendment redundant. Likewise, mandatory-detention exceptions under § 1226(c) are meaningful only if there is a default of discretionary detention—and there is, under § 1226(a). *See Rodriguez*, 2025 WL 1193850, at *12.

48. Additionally, "[w]hen Congress adopts a new law against the backdrop of a

longstanding administrative construction, the court generally presumes that the new provision works in harmony with what came before." *Monsalvo v. Bondi*, 604 U.S. _, 145 S. Ct. 1232, 1242 (2025). Congress adopted the Act against the backdrop of decades of agency practice applying § 1226(a) to immigrants like Petitioner, who are present in the United States but have not been admitted or paroled. *Rodriguez*, 2025 WL 1193850, at *15; *Martinez*, 2025 WL 2084238, at *4; 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.").

49. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." Removal hearings for noncitizens under 1226(a) are held under § 1229a, which "decid[e] the inadmissibility or deportability of a[] [noncitizen]." By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States.

50. The analysis and holding by the BIA in *Matter of Yajure Hurtado* has also consistently been rejected by district courts across the country over the last several months. *See Sampiao v. Hyde, et al*. 1:25-cv-11981-JEK (D. Mass. Sept. 9, 2025) (addressing *Matter of Hurtado* and finding that the Board's analysis is incorrect); *Alvarez Martinez v. Noem, et al.*, 5:25-CV-01007-JKP (W.D. TX Sept. 8, 2025) (finding section 1225 does not apply); *Carmona-Lorenzo v. Trump*, No. 4:25-cv-3172, 2025 WL 2531521 (D. Neb. Sept. 3, 2025); *Fernandez v. Lyons*, No. 8:25-cv-506, 2025 WL 2531539 (D. Neb. Sept. 3, 2025).*Reynosa Jacinto v. Trump, et al*, 4:25-cv-03161-JFB-RCC (D. Neb. August 19, 2025); *see, e.g.*, *Aguilar Maldonado v.*

*Olson, et al*, No. 25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. August 18, 2025); *Mohammed H. v. Trump*, No. 25-cv-1576 (JWB/DTS), 2025 WL 1334847 (D. Minn. May 5, 2025); *Rocha Rosado*, 2025 WL 2337099; *Martinez*, 2025 WL 2084238; *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025); *see also* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (explaining that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination").

51. This Court is not required, and should not, give deference to the recent Board decision cited in Respondent's brief. In *Loper Bright*, the Supreme Court was clear that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," and indeed "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). Rather, this Court can simply look to the Supreme Court's own words in *Jennings* that held that for decades, § 1225 has applied only to noncitizens "seeking admission into the country"—i.e., new arrivals, and that this contrasts with § 1226, which applies to noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

### Claims for Relief

**FIRST CAUSE OF ACTION**

Violation of the Due Process Clause of the Fifth Amendment
of the United States Constitution

52. Petitioner repeats and incorporates by reference all allegations above as though set

13

forth fully herein.

53. The Due Process Clause asks whether the government's deprivation of a person's life, liberty, or property is justified by a sufficient purpose. Here, there is no question that the government has deprived Petitioner of his liberty by refusing him the opportunity to request a bond hearing.

54. The government's detention of Petitioner is unjustified. Respondents have not demonstrated that Petitioner needs to be detained. *See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Petitioner cannot be safely released back to his community and family.

55. The *Matter of Yajure Hurtado* decision wrongly interprets the Immigration and Nationality Act.

56. This Court is not required to give deference to *Matter of Yajure Hurtado*. In *Loper Bright*, the Supreme Court was clear that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," and indeed "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

57. Rather, this Court can simply look to the Supreme Court's own words in *Jennings* that held that for decades, § 1225 has applied only to noncitizens "seeking admission into the country"—i.e., new arrivals, and that this contrasts with § 1226, which applies to noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). By keeping Petitioner detained today, his detention is unconstitutional as

applied to him and in violation of his due process rights. Petitioner should have the opportunity to have a bond hearing before an Immigration Judge.

58. By issuing its decision in *Matter of Yajure Hurtado*, the BIA has taken nearly all bond authority away from Immigration Judges.

59. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## SECOND CAUSE OF ACTION

Violation of the Immigration and Nationality Act

60. Petitioner repeats and incorporates by reference all allegations above as though fully set forth fully herein.

61. Petitioner has been detained and will not be afforded the opportunity to have a bond redetermination hearing before an Immigration Judge pursuant to *Matter of Yajure Hurtado*.

62. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. Mandatory detention does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

100. The BIA has wrongfully issued its decision in *Matter of Yajure Hurtado* finding all noncitizens, such as Petitioner, are subject to mandatory detention under § 1225(b)(2).

101. The unlawful application of § 1225(b)(2) to Petitioner violates the INA.

**Prayer for Relief**

WHEREFORE, Petitioner respectfully request that this Honorable Court:

A. Accept jurisdiction over this action;

B. Declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and violates the Immigration and Nationality Act;

C. Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to schedule a bond hearing for Petitioner's removal proceedings within 5 days of the order and accept jurisdiction to issue a bond order;

D. Award reasonable attorneys' fees and costs for this action; and

E. Grant such further relief as the Court deems just and proper.

Dated: October 3, 2025                     Respectfully Submitted,

/s/ Jennifer Peyton

JENNIFER PEYTON, Esq.
KRIEZELMAN BURTON &ASSOCIATES
200 West Adams Street, Suite 2211
Chicago, Illinois 60606
(312) 332-2550, jpeyton@krilaw.com
Ohio State Bar # 0069675
Attorney for Petitioner